**METOYER v. DARBY & PERKINS, Inc., et al.**

**No. 5937.**

Court of Appeal of Louisiana.
Second Circuit.

Feb. 7, 1940.

Hunter & Hunter, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff sustained a serious back injury on September 17, 1936, while performing his duties as an employee of the defendant, Darby & Perkins, Inc., and was paid compensation for 61 weeks on the basis of total disability. On November 17, 1937, he was discharged from treatment by attending physicians as having recovered from his injuries and as being able to resume work. On May 6, 1938, he instituted the present suit wherein he alleges that he had not recovered from said injuries and effects thereof; that his disability was total and permanent. He sues for 65% of his weekly wages for a period of 400 weeks, less compensation paid him. The carrier of the employer's compensation liability insurance, the Fidelity & Casualty Company, is impleaded as defendant also.

Plaintiff's employment, his rate of wages, the original injury, that the employer's business is hazardous, and the payment of compensation for 61 weeks are admitted by defendants. They deny, however, that since discontinuance of compensation payments, plaintiff has suffered and now suffers any disability attributable to the accident of September 17, 1936.

Plaintiff's demands were rejected and he prosecutes this appeal.

When injured, plaintiff was in a stooping position, mounting an automobile wheel on a car parked against the curb at his employer's place of business. Another car, operated by the employer's manager, backed into him rather violently. He was knocked forcefully forward and against the other car and was rendered temporarily unconscious. He says the bumper struck him about the middle of his back. He was promptly carried to a local sanitarium and there treated. X-ray pictures revealed compressed fractures of the tenth and eleventh dorsal vertebrae. No other bone injuries were discovered. Approved methods for treating such injuries were adopted, consisting of application of cast for a month or more, followed by the use of braces until the attending physicians discharged him.

Plaintiff does not attribute his alleged disability to the injury to said vertebrae, but to the alleged posterior dislocation of the fifth lumbar vertebra on the sacrum, which, he also asserts, occurred in the accident of September 17, 1936. Specifically, he alleges that the sacrum is riding on the posterior third of the body of the fifth lumbar vertebra at an angulation of approximately forty-five degrees, the malposition producing a weakness of the back, accompanied by pain and discomfort, and the pulling from normal alignment the muscle and tendon attachments of that portion of the back and spine. The ultimate resultant is alleged to be "weakness to the entire back and constant pain, exaggerated by any physical exertion and directly affecting the muscles, tendons and nerves of the back and entire body."

Plaintiff supports the allegations of the petition by his testimony. He testified that he has not been without pain and discomfort since the accident and that he has not worked any subsequent thereto; that he cannot do manual labor, the only work he could follow for a livelihood, and has not done so since the date of the injury.

Plaintiff was examined by Dr. J. C. Willis, Jr., on November 30, 1937, two weeks after the braces were removed, and an X-ray picture of his back was then made by Dr. Oscar O. Jones, a radiologist. According to the testimony of these two doctors, the fifth lumbar vertebra is out of position with reference to the sacrum. The posterior of the sacrum, they say, is pushed "into" the vertebra, its position being at a forty-five degree angle to the latter, causing "bad position of the whole back." They ascribe this malcondition to the original accident and are certain total disability could result and has resulted therefrom, accompanied by the pain and discomfort of which plaintiff complains.

Defendants support their defense by testimony of two reputable practicing physicians of the City of Shreveport, who attended and observed plaintiff from the time of the accident until his discharge, and also by the testimony of two equally reputable radiologists. These experts agree with those who testified for plaintiff regarding the relative position of the fifth lumbar vertebra to the sacrum, but are positive the malposition is not the result of trauma, but is simply a postural

condition, known to the laity as "sway-back", and to the medical world as "lordosis". They were unable to discover any evidence whatever of any injury to the fifth dorsal vertebra or of the sacrum. Four X-ray pictures, at intervals of months, were taken during the year 1937.

While treating plaintiff, his physicians did not give particular attention to the lumbar part of his back as he, at no time while in their charge, complained of pain in this region. They are positive that if the vertebra and sacrum had been injured to the extent of producing dislocation, the trauma would have been accompanied by intense pain. The relative position of these two bones, they all say, is not uncommon. Such position superinduces "sway-back" because of the angulation present. The angulation is about forty-five degrees in the present case. Textwriters on the subject say: "Normally, the anterior surface of the fifth lumbar vertebra forms a continuous plane with the sacrum, at an angle, however, of about forty-five degrees." Upon this joint is thrust the entire weight of the trunk and all of its attachments. Therefore, if this joint is injured seriously, disability of greater or less extent inevitably follows. However, the textwriters agree that usually an injury to this joint, producing dislocation, should heal in from four to eight months. In very severe cases, they say, permanent disability ranging from 25 to 50% is often experienced. Plaintiff's physician thought sufficient time had not elapsed for the torn ligaments and tendons to have re-attached. He was not certain that permanent disability would result, but was positive that total disability presently exists.

Plaintiff says that the bumper struck him about the middle of the back. Relatively, that spot is far removed from the sacrum and fifth dorsal vertebra. The tenth and eleventh dorsal vertebrae are near the back's center. If the force of the impact was against the middle of the back, it appears reasonably certain the bumper did not strike lower down also. Had it done so, most probably it would have sheared the flesh and skin from that point upward to the injured vertebrae. There were no such signs on the back. Again, had the force of the blow first landed about the sacrum and fifth lumbar, it is highly improbable that the tenth and eleventh dorsal would have been injured as they were, apparently from the effect of a direct blow.

Plaintiff suffered a hard fall in April, 1938, not over a month before this suit was filed. He attributes the fall to the alleged injury upon which he relies for recovery of compensation. The fall necessitated the attention of a physician as plaintiff was in considerable pain thereafter. The circumstances of this fall are not disclosed beyond the rather brief testimony of plaintiff thereon. No member of his family nor occupant of the home in which he lived and where it happened was called as a witness to corroborate what he said about it. The record is also suspiciously barren of any lay testimony whatever, besides that of plaintiff, touching his movements, activities and conduct from the time he was discharged by his physicians until the day the case was tried, June 10, 1938. Not one witness appeared to tell the court that from observation and contact he knew that during this interim plaintiff was unable to work or that his physical condition was what he claims it to be. In this respect, the case is unique.

■■ The lower court evidently did not think the case made out. We fully agree with that conclusion. If we were uncertain on the question, the lower court's resolution of the factual issue would be controlling.

Judgment is affirmed with costs.